Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Michael Marchand (SBN 281080)
mmarchand@blakelylawgroup.com
BLAKELY LAW GROUP
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

*Attorneys for Plaintiffs*
*Coach, Inc., and Coach Services, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COACH, INC., a Maryland Corporation, and COACH SERVICES, INC., a Maryland Corporation,<br><br>      Plaintiffs,<br><br>  vs.<br><br>BLING BLING CELL, an unknown business entity; MUHAMMED FAROOQ, an individual and DOES 1-10, inclusive,<br><br>      Defendants. | CASE NO. 13-04675-PA-JCx<br><br>**PLAINTIFFS' APPLICATION FOR DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing:<br><br>Date:   June 30, 2014<br>Time:   1:30 pm<br>Courtroom: 15<br><br>**Honorable Percy Anderson** |

TO: THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

   PLEASE TAKE NOTICE that on Monday, June 30, 2014 or as soon thereafter as this matter may be heard by the Court, located at 312 North Spring Street, Los Angeles, CA 90012-4701, Courtroom 15, Plaintiffs Coach, Inc., and Coach Services, Inc. will present their Application for Default Judgment against Defendants **Bling Bling Cell and Muhammed Farooq** (collectively "Defendants") pursuant to Federal

Rule of Civil Procedure 55 on their claim for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

At the time and place of hearing, Plaintiffs will present proof of the following matters:

1.     On March 25, 2014, Plaintiffs filed a Second Amended Complaint against Defendants Bling Bling Cell and Muhammed Farooq for Federal Trademark Infringement, Trade Dress Infringement, False Designations of Origin and False Descriptions, Federal Trademark Dilution, Trademark Dilution Under California Law and Common Law Unfair Competition (Declaration of Michael Marchand ("Marchand Decl."), ¶ 2)

2.     Defendants were served with the Summons and Second Amended Complaint on March 27, 2014.  (Marchand Decl., ¶ 3, Docket #33, 34)

3.     On May 16, 2014, the Clerk of this Court entered default as to all Defendants.  (Marchand Decl. ¶ 4, Docket #37, 38)

4.     Defendants are not infants or incompetent persons or in military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. (Marchand Decl., ¶ 5)

5.     Notice of this Motion for Default Judgment was served on Defendants on June 2, 2014 pursuant to Local Rule 55-1 and FRCP 55(b)(2).  (Marchand Decl., ¶ 6; Proof of Service filed concurrently herewith)

6.     Plaintiffs are entitled to a default judgment against Defendants on account of the claim pleaded in the Complaint, to wit:  Federal Trademark Infringement in violation of the Lanham Act, 15 U.S.C. §1114

The Judgment sought against Defendants consists of the sum of **$100,000.00,** and the costs of this action.

1  This Application is based on this Notice, the Declaration of Michael Marchand, the

2  Memorandum of Points and Authorities in support of this Application for Default

3  Judgment, and the pleadings, files and other matters that may be presented at the

4  hearing.

5

6  DATED:                              BLAKELY LAW GROUP

7

8                                By:    /s/ Michael Marchand
                                       Brent H. Blakely
9                                      Michael Marchand
                                       *Attorneys for Plaintiffs*
10                                     *Coach, Inc., and Coach Services, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................4

II.     STATEMENT OF FACTS...................................................................4

        A.      Coach's Family of Trademarks and Logos ...................................4

        B.      Defendants' Infringing Conduct and Failure to Litigate ...............6

III.    LEGAL ARGUMENT .........................................................................7

        A.      Legal Standard for Entry of Default and Default Judgment..........7

                1.      *Possibility of Prejudice to Plaintiffs* ....................................8

                2.      *Merits of Plaintiffs' Substantive Claim and Sufficiency of
                        the Complaint*....................................................................8

                3.      *Sum of Money at Stake* .......................................................9

                4.      *Possibility of Dispute Concerning Material Facts*...............9

                5.      *Whether Default was Due to Excusable Neglect*.................10

                6.      *Strong Policy Underlying the Federal Rules of Civil
                        Procedure* ........................................................................10

        B.      Plaintiffs are Entitled to Statutory Damages [15 U.S.C. §
                1117(c)] .........................................................................10

                1.      Analysis Statutory Damages Factors ...................................11

                2.      Enhanced Damages for Willful Counterfeiting...................14

                3.      Permissible Range of Statutory Damages ...........................14

        C.      Plaintiffs are Entitled to Costs ....................................................14

        D.      Plaintiffs are Entitled to a Permanent Injunction ........................14

IV.     CONCLUSION...................................................................................15

# TABLE OF AUTHORITIES

<u>CASES</u>

Brookfield Communications v. West Coast Entertainment,
    174 F.3d 1036 (9th Cir. 1999) ........................................................................ 9

Derek Andrew, Inc. v. Poof Apparel Corp.,
    528 F.3d 696 (9th Cir.2008) .................................................................. 13, 14

Eitel v. McCool,
    782 F.2d 1470 (9th Cir. 1986) ....................................................................... 7

Geddes v. United Financial Group,
    559 F.2d 557 (9th Cir. 1977) ......................................................................... 7

Gucci America v. Duty Free Apparel,
    286 F.Supp. 2d 284 (E.D.N.Y. 2003) .......................................................... 9

Kingvision Pay-Per-View, Ltd. v. Rivers,
    2000 WL 356378 (N.D.Cal. 2000 ............................................................... 8

Lau Ah Yew v. Dulles,
    236 F.2d 415 (9th Cir. 1956) ......................................................................... 7

Lindy Pen Co. v. Bic Pen Corp.,
    982 F.2d 1400 (9th Cir., 1993) ....................................................... 10, 13, 14

Microsoft Corp. v. Nop,
    549 F.Supp.2d 1233 (E.D.Cal, 2008) ........................................................ 11

Pepsico, Inc. v. Cal. Sec. Cans,
    238 F. Supp. 2d 1172 (C.D. Cal. 2002) ......................................... 9, 10, 14, 15

Philip Morris USA, Inc. v. Castworld Products, Inc.,
    219 F.R.D. 494 (C.D. Cal. 2003) ................................................... 10, 14, 15

Playboy Enters., Inc. v. Baccarat Clothing Co.,
    692 F.2d 1272 (9th Cir.1982) ..................................................................... 13

Polo Fashions v. Dick Bruhn,
    793 F2d 1132, (9th Cir. 1986) .................................................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Televideo Systems, Inc. v. Heidenthal,
    826 F.2d 915 (9th Cir. 1987) ............................................................ 8

Tiffany, Inc. v. Luban,
    282 F.Supp.2d 123 (S.D.N.Y., 2003) ............................................ 11

United Phosphorus, Ltd. v. Midland Fumigant, Inc.,
    205 F.3d 1219 (10th Cir., 2000) .................................................... 10

STATUTES

15 U.S.C. § 1114 ............................................................................. 2

15 U.S.C. § 1117(c) ........................................................................ 10

15 U.S.C. §1114 ............................................................................... 2

15 U.S.C. §1114(a)(1) ...................................................................... 9

15 U.S.C. §1116(a) .......................................................................... 14

15 U.S.C. §1117(a) .......................................................................... 10

15 U.S.C. 1116(d) ............................................................................ 11

17 U.S.C. § 504(c) ........................................................................... 11

PLAINTIFFS' APPLICATION FOR DEFAULT JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On March 25, 2014, Plaintiffs Coach, Inc., and Coach Services, Inc. (collectively "Plaintiffs" or "Coach") filed a Second Amended Complaint in the above-entitled matter against Defendants Bling Bling Cell and Muhammed Farooq (collectively "Defendants") for trademark infringement, and related claims regarding the purchase and sale of goods bearing counterfeit reproductions of the Coach trademarks. On May 16, 2014, the Clerk of this Court entered default against all Defendants after Defendants failed to file a responsive pleading to the Complaint. Plaintiffs have satisfied the requirements of FRCP 55. Consequently, Plaintiffs respectfully request that this Court grant Plaintiffs' Application for Default Judgment against Defendants.

## II.   STATEMENT OF FACTS

### A.   Coach's Family of Trademarks and Logos

Coach was founded more than seventy years ago as a family-run workshop in a Manhattan loft. Since that time, Coach has been engaged in the manufacture, marketing, and sale of fine leather and mixed material products including handbags, wallets, travel cases, briefcases, planners and diaries, leather goods, watches, eyewear, footwear, apparel, and accessories. (SAC ¶ 10)

Coach is the worldwide owner of the trademark "COACH" and various composite trademarks and assorted design components. (collectively "Coach Marks"). (SAC, ¶ 11)

Amongst the many Coach Marks, one of the most well-known and recognized marks is Coach's Op Art Mark (see below). Coach has used the Op Art Mark in association with the sale of goods since as early as October, 2008. The Op Art Mark was first registered at the U.S. Patent and Trademark Office on October 13, 2009 (U.S. Reg. No. 3,696,470). (SAC, ¶ 12)

4

Many of Coach's products exhibit composites of the Op Art Mark in an assortment of different sizes, patterns, and colors ("Op Art Pattern") (SAC, ¶ 13)

Plaintiffs' Op Art Mark and Op Art Pattern are highly recognized by the public and serves to identify the source of the goods as Coach.  (SAC, ¶ 14)

Coach has long been manufacturing and selling in interstate commerce high quality leather and mixed material products under the Op Art Mark.  Through longstanding use, advertising, and registration, the Op Art Mark has achieved a high degree of consumer recognition and constitutes a famous mark.  (SAC, ¶ 15)

In addition to the trademark registrations listed above, Coach is also the owner of a copyright registration to the "Op Art Design" (U.S. Reg. No. VA1-694-574). (SAC, ¶ 16)

Coach and its predecessors have continuously used the Op Art Mark, Op Art Pattern, and Op Art Design in interstate commerce in connection with the sale, distribution, promotion, and advertising of its goods.  (SAC, ¶ 17)

Coach and its predecessors have achieved considerable sales from goods bearing the Op Art Mark, Op Art Pattern, and Op Art Design.  As such, the goodwill associated therewith are valuable assets of Coach. (SAC, ¶ 18)

Coach and its predecessors have contributed substantial expenditures in advertising, promoting, and marketing goods featuring the Op Art Mark, Op Art Pattern, and Op Art Design. (SAC, ¶ 19)

Due to Coach and its predecessors' long use, extensive sales, and significant advertising and promotional activities, the Op Art Mark, Op Art Pattern, and Op Art Design have achieved widespread acceptance and recognition among the consuming public and trade throughout the United States.  The arbitrary and distinctive Op Art

5

Mark identifies Coach as the source/origin of the goods on which it appears. (SAC, ¶ 20)

  **B.**  **Defendants' Infringing Conduct and Failure to Litigate**

  On May 5, 2013, Coach discovered that the Infringing Products depicted below were being offered for sale by Defendant Bling Bling Cell through its retail kiosk located in the South Bay Pavilion at 20700 Avalon Blvd. #5523, Carson, CA. (SAC, ¶ 21)

**Defendants' Infringing Product**



**Authentic Coach Products**



**PLAINTIFFS' APPLICATION FOR DEFAULT JUDGMENT**

Plaintiffs' representatives have inspected the aforesaid Infringing Products and determined same to be counterfeit rather than original Coach products bearing authentic Coach Marks and Designs.  (SAC, ¶ 22)

As such, Defendant Bling Bling Cell is selling products imprinted with a reproduction, counterfeit, copy or colorable imitation of the Op Art Mark, Op Art Pattern, and/or Op Art Design.  (SAC, ¶ 23)

Upon information and belief, Defendant Muhammed Farooq is the active, moving conscious force behind the alleged infringing activities.  (SAC, ¶ 24)

Defendants are not authorized by Coach to manufacture, distribute, advertise, offer for sale, and/or sell merchandise bearing any of Plaintiffs' federally registered trademarks and copyrights.  (SAC, ¶ 25)

## III.   LEGAL ARGUMENT

### A.   Legal Standard for Entry of Default and Default Judgment

Pursuant to FRCP Rule 55(b), a default judgment may be entered by the clerk as well as by the court.  FRCP 55(b)(2) governs applications to the Court for a judgment by default. [Lau Ah Yew v. Dulles, 236 F.2d 415 (9th Cir. 1956)]

In the Ninth Circuit, a district court may consider the following factors in exercising its discretion to award a default judgment:  (1) the possibility of prejudice to the Plaintiffs, (2) the merits of Plaintiffs' substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  [Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986)].

In applying this discretionary standard, the factual allegations contained in the Plaintiffs' complaint will be taken as true, except for those relating to the amount of damages. [Geddes v. United Financial Group, 559 F.2d 557 (9th Cir. 1977); Televideo

1  Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987); Kingvision Pay-

2  Per-View, Ltd. v. Rivers, 2000 WL 356378, *1 (N.D.Cal. 2000)]

3        **1.    *Possibility of Prejudice to Plaintiffs***

4        Plaintiffs would be extremely prejudiced if default judgment was not granted

5  against the Defendants.  Through the sale and offer for sale of counterfeit Coach

6  products, Defendants have injured Plaintiffs' reputation in the handbag and accessories

7  industry as well as Plaintiffs' business.  Specifically, consumers who purchased

8  Defendants' counterfeit products were confused as to their source, believing them to be

9  genuine Coach products, and were inevitably disappointed by the inferior quality,

10  design and style of Defendants' counterfeit products.

11        Since Defendants have completely ignored this lawsuit and have not cooperated

12  in provided their sales and profit information to Plaintiffs, it is likely that it has

13  continued and will continue its infringing activities, causing even further injury to

14  Plaintiffs.  As such, if default judgment is not granted, Plaintiffs will be left with no

15  recourse for their injuries to their reputation and business caused by Defendants'

16  illegal counterfeiting activities, as well as for their efforts in litigating this case.  Such

17  an outcome would certainly be prejudicial to Plaintiffs.

18        **2.    *Merits of Plaintiffs' Substantive Claim and Sufficiency of the***

19                ***Complaint***

20        With respect to the merits of Plaintiffs' substantive claim (second factor) and the

21  sufficiency of the complaint (third factor), Plaintiffs have set forth a well-pleaded

22  Complaint, and have listed all the essential facts and elements as to each of their

23  causes of action against Defendants, including a cause of action for Federal Trademark

24  Infringement under 15 U.S.C. § 1114 of the Lanham Act.

25        To prevail on its trademark infringement claim under the Lanham Act, Plaintiffs

26  must prove that, without their consent, Defendant used in commerce a reproduction or

27  copy of Plaintiffs' registered trademark in connection with the sale or advertising of

28  any goods or services, and that such use is likely to cause confusion, mistake, or

deceive customers.  [15 U.S.C. §1114(a)(1); <u>Brookfield Communications v. West</u> <u>Coast Entertainment</u>, 174 F.3d 1036, 1046 (9th Cir. 1999)]  Likelihood of confusion is presumed in a case where, as here, the Defendant has manufactured, sold or distributed counterfeit goods.  [<u>Gucci America v. Duty Free Apparel</u>, 286 F.Supp. 2d 284, 287 (E.D.N.Y. 2003)]

As such, Plaintiffs properly allege the necessary elements for a cause of action for trademark infringement in violation of the Lanham Act.  The complaint identifies Plaintiffs' ownership of and exclusive rights to use the incontestable and registered Op Art Mark.  (Complaint, ¶ 11)  Defendants used the Mark in commerce, in connection with the purchase, advertising and sale of counterfeit products bearing Plaintiffs' Op Art Mark without Plaintiffs' consent.  (Complaint, ¶¶ 21-23)  In addition, Plaintiffs' Complaint alleges that Defendants' use of Op Art Mark is likely to cause confusion or mistake or to deceive customers and has thereby caused damage to Plaintiffs.  (Complaint, ¶¶ 26, 26)  Accordingly, the second and third <u>Eitel</u> factors likewise favor entry of default judgment against Defendants.

### 3.   *Sum of Money at Stake*

With respect to the fourth factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  [<u>Pepsico, Inc. v. Cal.</u> <u>Sec. Cans</u>, 238 F. Supp. 2d 1172, 1176 (C.D. Cal., 2002)]  Defendants have engaged in illegal transactions involving the sale and distribution of counterfeit products.  Defendants' actions have caused damage to Plaintiffs' reputation for high quality goods and have diverted profits away from Plaintiffs, the legitimate owners of the Op Arr Mark.  Moreover, Defendants continue to ignore this lawsuit by failing to plead or otherwise defend in this action.  Due to such reprehensible conduct on the part of Defendants, Plaintiffs are entitled to a substantial default judgment award.

### 4.   *Possibility of Dispute Concerning Material Facts*

Plaintiffs have satisfied the fifth <u>Eitel</u> factor as well, since all well-pleaded facts in the Complaint are to be taken as true upon entry of default.  In this case, Plaintiffs

have filed a well-pleaded complaint alleging the facts necessary to establish their claims, and this Court has entered default against Defendants. Consequently, there is no dispute regarding the material averments of the Complaint, and the likelihood that any genuine issue exists is at best, remote.  [See Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003)]

### 5.   *Whether Default was Due to Excusable Neglect*

Defendants have been properly served, and had months to respond to the Complaint served upon them by Plaintiffs.  However, Defendants have failed to file an answer or otherwise make an appearance in this case.  Such behavior by Defendants should in no way be seen as excusable neglect.

### 6.   *Strong Policy Underlying the Federal Rules of Civil Procedure*

Finally, the mere existence of FRCP 55(b) indicates that the seventh Eitel factor is not alone dispositive.  [Phillip Morris, 219 F.R.D. at 501.]  Defendants have failed to set forth any type of defense to this action.  Under FRCP 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." [Id.  See also Pepsico, Inc. v. Cal. Sec. Cans., 238 F.Supp.2d 1172, 1177 (C.D.Cal., 2002)]  Therefore, the seventh factor favors granting a default judgment.

### B.   <u>Plaintiffs are Entitled to Statutory Damages [15 U.S.C. § 1117(c)]</u>

Trademark infringement plaintiffs may recover (1) defendant's profits; (2) damages sustained by the plaintiff; and (3) the costs of the action. [15 U.S.C. §1117(a) Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1405 (9th Cir., 1993)]. "The purpose of section 1117 is to take all the economic incentives out of trademark infringement. [Polo Fashions v. Dick Bruhn, 793 F2d 1132, 1135 (9th Cir. 1986)]  Typically, a plaintiff is entitled to either 1) defendant's profits or 2) plaintiff's lost profits.  [United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1235 (10th Cir., 2000)]

However, since Defendants have not provided any discovery in this case, Plaintiffs lack information sufficient to determine the exact amount of Defendants' profits or the amount of counterfeit product actually sold by them.  As an alternative

1    form of relief, Plaintiffs ask the Court to award it statutory damages pursuant to 15

2    U.S.C. §1117(c) .

3          Section 1117(c) of the Lanham Act provides, in pertinent part:

4

5          "(c) In a case involving the use of a counterfeit mark (as
           defined in section 34(d) (15 U.S.C. 1116(d)) in connection with
6          the sale, offering for sale, or distribution of goods or services,
           the Plaintiffs may elect, at any time before final judgment is
7          rendered by the trial court, to recover, instead of actual damages
           and profits under subsection (a), an award of statutory damages
8          for any such use in connection with the sale, offering for sale,
           or distribution of goods or services in the amount of– (1) not
9          less than $ 1,000 or more than $ 200,000 per counterfeit mark
           per type of goods or services sold, offered for sale, or
10         distributed, as the court considers just" [15 U.S.C. § 1117(c)]

11         While the Lanham Act does not provide guidelines for courts to determine an

12   appropriate award of statutory damages, courts have found guidance in the case law

13   relating to the analogous provision for statutory damages in 17 U.S.C. § 504(c).

14   [Tiffany, Inc. v. Luban, 282 F.Supp.2d 123, 125 (S.D.N.Y., 2003); Microsoft Corp. v.

15   Nop, 549 F.Supp.2d 1233, 1237-38 (E.D.Cal, 2008)]  Pursuant to 17 U.S.C. § 504(c),

16   courts consider the following factors in determining the amount of statutory damages

17   to award:

18         (1) "the expenses saved and the profits reaped;" (2) "the
           revenues lost by the plaintiff;" (3) "the value of the copyright;"
19         (4) "the deterrent effect on others besides the defendant;" (5)
           "whether the defendant's conduct was innocent or willful;" (6)
20         "whether a defendant has cooperated in providing particular
           records from which to assess the value of the infringing
21         material produced;" and (7) "the potential for discouraging the
           defendant." [Id.]

22         **1.    Analysis Statutory Damages Factors**

23              *a.    Coach Lacks Information Regarding Defendants' Profits*

24                    *and Coach's Losses Due to Defendants*

25         The first two factors of the statutory damages analysis – the profits reaped by

26   Defendants and losses incurred by Coach, cannot be determined since Defendants have

27   failed to provide any information to Coach regarding their infringing activities.

28

1    Coach discovered that Defendants were offering multiple products bearing

2  marks and designs identical and/or substantially indistinguishable from Coach's Op

3  Art Mark for sale through their respective retail storefront.  (Complaint, ¶¶ 21-23)

4  Defendants have not cooperated in providing Plaintiffs with information regarding

5  their sales and revenue in connection with the products in dispute.  (Marchand Decl.,

6  ¶¶ 4, 7)

7                    ***b.    The Value of the Trademark***

8              The third factor is the value of the trademarks at issue – the Coach Op Art Mark.

9  Coach has used the Op Art Mark in association with the sale of goods since as early as

10  October, 2008.  The Op Art Mark was first registered at the U.S. Patent and Trademark

11  Office on October 13, 2009 (U.S. Reg. No. 3,696,470)  Plaintiffs' Op Art Mark is

12  highly recognized by the public and serves to identify the source of the goods as

13  Coach.  (FAC, ¶ 14)  Coach has long been manufacturing and selling in interstate

14  commerce high quality leather and mixed material products under the Op Art Mark.

15  Through longstanding use, advertising, and registration, the Op Art Mark has achieved

16  a high degree of consumer recognition and constitutes a famous mark.  (FAC, ¶ 15)

17  Coach and its predecessors have continuously used the Op Art Mark in interstate

18  commerce in connection with the sale, distribution, promotion, and advertising of its

19  goods.  (FAC, ¶ 17) Coach and its predecessors have achieved considerable sales from

20  goods bearing the Op Art Mark  As such, the goodwill associated therewith are

21  valuable assets of Coach. (FAC, ¶ 18) Coach and its predecessors have contributed

22  substantial expenditures in advertising, promoting, and marketing goods featuring the

23  Op Art Mark (FAC, ¶ 19) Due to Coach and its predecessors' long use, extensive sales,

24  and significant advertising and promotional activities, the Op Art Mark, has achieved

25  widespread acceptance and recognition among the consuming public and trade

26  throughout the United States.  The arbitrary and distinctive Op Art Mark identifies

27  Coach as the source/origin of the goods on which it appears. (FAC, ¶ 20)

28

c. ***The Deterrent Effect on Others Aside Defendants and the Potential for Discouraging the Defendants***

The fourth and seventh factors relate to the deterrence policy underlying 15 U.S.C. § 1117(c).   Indeed, the Ninth Circuit has articulated a deterrence policy to discourage trademark infringement. [*See* <u>Playboy Enters., Inc. v. Baccarat Clothing Co.</u>, 692 F.2d 1272 (9th Cir.1982); <u>Lindy Pen Co., Inc. v. Bic Pen Corp.</u>, 982 F.2d 1400, 1406 (9th Cir.1993) (citing <u>Playboy Enterprises</u> for the proposition that "this circuit has announced a deterrence policy in response to trademark infringement."] In <u>Playboy Enterprises,</u> the Ninth Circuit Noted:

> "In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark infringement. Many consumers are willing to pay substantial premiums for particular items which bear famous trademarks based on their belief that such items are of the same high quality as is traditionally associated with the trademark owner… For these reasons, it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement."

As such, the deterrence policy of 15 U.S.C. § 1117(c) strongly supports an award of statutory damages.

d. ***Defendants' Willful Infringement of the Coach Marks***

The fifth factor is whether Defendants' infringing conduct was willful. Coach alleges that Defendants "acts are deliberate and intended to confuse the public as to the source of Defendants' goods or services and to injure Plaintiffs and reap the benefit of Plaintiffs' goodwill associated with Plaintiffs' trademarks." (Complaint, ¶ 39)  An allegation of willful trademark infringement is deemed true on default.  [<u>Derek Andrew, Inc. v. Poof Apparel Corp.</u>, 528 F.3d 696, 698 (9th Cir.2008)]  Since default has been entered as to Defendants, willfulness is presumed.  (Marchand Decl., ¶ 4)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### e. Defendants Have Not Cooperated in Providing Information Regarding Their Infringing Activities

The sixth factor is whether Defendants have cooperated in providing information regarding their infringing activities.  Once again, Defendants have failed to appear in this case, and have not provided Coach with any information regarding their sale of Counterfeit Coach products.  (Marchand Decl., ¶ 7)

### 2.   Enhanced Damages for Willful Counterfeiting

Where the court finds that use of the counterfeit mark was willful, plaintiffs are entitled to up to $2 million in statutory damages per counterfeit mark per type of goods sold, offered for sale, or distributed. [15 U.S.C. § 1117(c); Philip Morris U.S.A. Inc., 219 F.R.D. at 501 (D. Cal., 2003)]

### 3.   Permissible Range of Statutory Damages

An allegation of willful trademark infringement is deemed true on default. [Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 698 (9th Cir.2008)]  As such, Defendants' willful counterfeiting of Coach trademarks regarding one type of goods mandates an award of statutory damages in the amount of $1,000 to $2,000,000 under 15 U.S.C. § 1117(c).   Based on the foregoing, Plaintiffs request statutory damages in the amount of **$100,000.00**.

### C.   Plaintiffs are Entitled to Costs

In addition to damages under the Lanham Act, Plaintiffs are also entitled to their costs.  [15 U.S.C. §1117(a); Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400 (9th Cir., 1993)]  Pursuant to Local Rule 54-3, Plaintiffs will submit their Bill of Costs within 15 days of entry of judgment.

### D.   Plaintiffs are Entitled to a Permanent Injunction

"The Lanham Act gives the court 'power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation' of a mark holder's rights." [Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); 15 U.S.C. §1116(a)]  Permanent injunctions are routinely

1   granted in cases where, like the instant case, a defendant has not appeared in the action

2   at all.  [Philip Morris, 219 F.R.D. at 502; Pepsico, 238 F.Supp.2d at 1178]  As such,

3   Plaintiffs request that this Court order a permanent injunction enjoining Defendants

4   from using the Signature "C" Mark in connection with the sale of infringing products.

5   **IV.   CONCLUSION**

6        Based upon the foregoing, Plaintiffs respectfully request that this Court enter

7   default judgment in the amount of **$100,000.00** as to Defendants Jona Trading, Marvel,

8   and P.J Handbags, in addition to the issuance of a Permanent Injunction against

9   Defendants and an award of costs of this action.

10

11  DATED:                          BLAKELY LAW GROUP

12                          By:   /s/ Michael Marchand
                                  Brent H. Blakely
13                                Michael Marchand
                                  *Attorneys for Plaintiffs*
14                                *Coach, Inc., and Coach Services, Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' APPLICATION FOR DEFAULT JUDGMENT**